UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AKLILU YOHANNES, | Case No. 2:17-CV-509-RSL |
| Plaintiff, | |
| v. | ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND DECLARATORY JUDGMENT |
| OLYMPIC COLLECTION INC. et al., | |
| Defendants. | |

This matter comes before the Court on the motions for summary judgment filed by defendants Olympic Collection Inc. ("OCI"), see Dkt. #104, Norman L. Martin, see Dkt. #105, Susan Cable, see Dkt. #106, and Farooq Ansari, see Dkt. #107; plaintiff Aklilu Yohannes' "Motion for Partial Summary Judgment", see Dkt. #112, and "Motion for Declaratory Judgment", see Dkt. #115; defendants' "Motion for Protective Order, Relief from a Deadline, and Attorney Fees Pursuant to 28 U.S.C. § 1927", see Dkt. #117; and plaintiff's responsive "Cross Motion for Protective Order." Dkt. #122. As the latter two concern plaintiff's motions for partial summary judgment and declaratory judgment, the Court deals with all seven motions in a single order.

## **BACKGROUND**

### A. Treatment at Baker Dental

Plaintiff received dental treatment from Baker Dental Implants and Periodontics ("Baker Dental") in late 2002. Dkt. #121-2 (Yohannes Decl. II) at ¶ 1. David A. Baker, DDS, MSD

owned Baker Dental. Plaintiff does not have any records showing that he made payments to Baker Dental. Dkt. #108-1 (Yohannes Dep.) at 49:13–18. He did not contact his insurance company to determine how much they had paid. Id. at 50:2–23. In December 2005, Baker Dental was sold to Dr. Jung Song. Id. at 7. The responsibility to collect any remaining debts was transferred to Dr. Song, who "was entitled to a fee or percentage for any of these collections." Id. at 10.

Defendants produced an Assignment of Claims for Collection dated February 14, 2006, that assigned Baker Dental's claim for $389.03 against plaintiff to OCI. Ex. 1, Dkt. #110-1. The "Assigned Date" is January 3, 2006. Id.; see Ex.4, Dkt. #112-4 (Martin Dep.) at 18:15–17. This was received by OCI on February 21, 2006. Ex. 4, Dkt. #110-1 at 12; see Dkt. #112-5 (Ansari Dep.) at 76:7–13. Plaintiff disputes the authenticity of this document, arguing that the name and contact information for the Financial Coordinator is not included, and that Baker Dental was no longer in business in Edmonds, Washington on February 14, 2006, and therefore could not have assigned any of its claims. Dkt. #32 (Am. Compl.) at ¶¶ 63–64. Plaintiff was not present when the document was created and does not know how it came into the possession of OCI. Yohannes Dep. at 51:1–13. Baker Dental stated in response to plaintiff's Request for Production No. 2 on March 29, 2019 that no contractual agreements with OCI were available. Dkt. #112-2 at 8. Dr. Song also stated that he was "unaware of any documents or records responsive" to plaintiff's request for contractual agreements with OCI. Ex. 3, Dkt. #112-3 at 2.[1]

---

[1] Plaintiff did not turn over to defendants the documents he received from Dr. Baker and Dr. Song, who he subpoenaed. Yohannes Dep. at 57:11–21, 58:17–21. He referred to them in his motion for partial summary judgment. See Dkt. #112. Defendants argued in their response that plaintiff should not be permitted to support his motion with evidence that was concealed until after the discovery cutoff. Dkt. #129 at 10. The Court declines to strike the evidence outright. It shows only that Dr. Baker and Dr. Song are not in possession of any responsive documents—not that these documents do not exist. The remainder of Dr. Baker and Dr. Song's responses are irrelevant or reiterate undisputed facts. See generally Ex. 2, Dkt. #112-2; Ex. 3, Dkt. #112-3.

## B. Snohomish County Lawsuit filed by OCI

In early 2006, OCI obtained Baker Dental's Patient Information form for plaintiff, which listed his address as 13619 Mukilteo Speedway D5-2, Lynnwood, Washington, and his employer as CTS. Ex. 1, Dkt. #112-1 at 2; see Ex. 2, Dkt. #110-1. Around January 5, 2006, OCI sought location information for plaintiff and obtained the same address of 13619 Mukilteo Speedway D5-2, Lynnwood, Washington. Ex. 1, Dkt. #112-1 at 3; see Ex. 4, Dkt. #110-1; see Dkt. #110 (Ansari Decl.) at ¶ 4. On January 6, 2006, OCI sent a letter to plaintiff demanding payment for a debt owed to Baker Dental with a principal amount of $389.03. Id. at 5. Plaintiff responded on January 25, 2006, disputing the debt. Id. at 6–7; see Dkt. #32-3 at 3. He also telephoned OCI and disputed the debt and the interest in OCI's demand letter. Id. at 8. On January 31, 2006, plaintiff requested that OCI verify the debt. Ex. 4, Dkt. #110-1 at 12. OCI sent the verification to plaintiff the next day. Id. In February 2006, OCI changed plaintiff's address in their system to 4920 94th Street, SW, Mukilteo, Washington. Id. On March 1, 2006, OCI filed a complaint against plaintiff in the Snohomish County District Court, seeking payment of the principal amount of $389.03, interest to the date of filing in the amount of $122.53 plus accumulated interest to the date of judgment, the filing fee in the amount of $53, reasonable or statutory attorney's fees in the amount of $200, and an estimated service fee in the amount of $35, for a total amount of at least $799.56. Dkt. #32-2 at 4; see Ex. 1, Dkt. #109-1. The lawsuit was filed by Martin. Dkt. #109 (Martin Decl.) at ¶ 2.

A Declaration of Service was filed on March 27, 2006, by Registered Process Server Isaac Delys. Dkt. #32-2 at 5. This Declaration states that Delys served plaintiff with the summons and complaint on March 26, 2006 at 11905 Highway 99, Everett, in Snohomish County. Id. Plaintiff claims that he was not served, and that the Declaration is defective. Am. Compl. at ¶¶ 61, 76. He testified that the description of himself in the Declaration was inaccurate because he is "outside the height and weight range that [the process server] specified." Yohannes Dep. at 72:6–7; see Ex. 8, Dkt. #112-8 (Yohannes Decl.) at ¶¶ 10–11. He stated that everything else was accurate. Id. at 72:23–73:10. A document from Precise Courier

describing the service states that the process server could not get into plaintiff's apartment complex, so he called plaintiff and made an appointment to meet him at a Wendy's located at 11905 Highway 99, Everett, Washington. Dkt. #108-2; see Yohannes Dep. at 75:4–76:20. Plaintiff confirmed that the phone number was his. Id. at 68:15–16.

### C. Default Judgment against Plaintiff

Plaintiff did not answer the complaint, and in April 2006, OCI filed a motion for default judgment. Martin Decl. at ¶ 4; see Ex. 3, Dkt. #109-1. Martin reviewed the ledger to check the prejudgment interest calculations and the accuracy of the principal amount. Martin Decl. at ¶ 4. The motion states that plaintiff resides at 11905 Highway 99, Everett, Washington. Ex. 3, Dkt. #109-1. That was the address for the Wendy's where plaintiff was served and is not his residential address. This was an error. Ansari Dep. at 62:15–63:13. On May 1, 2006, the Snohomish County District Court entered default judgment ("the Judgment") against plaintiff. Martin Decl. at ¶ 5. The Judgment has not been vacated. Id.; see Yohannes Dep. at 79:13–80:1. It expired on May 1, 2016. Martin Decl. at ¶ 9. OCI served a Writ of Garnishment on the Boeing Company in June 2006. Ex. 1, Dkt. #112-1 at 26. Between 2004 and 2011, plaintiff was employed with CTS and assigned contract work with Boeing. Yohannes Decl. at ¶ 12. Between 2011 and 2013, he was employed with CTS and assigned contract work with Gulfstream Aerospace in Savannah, Georgia. Id. at ¶ 13. In August 2006, following a telephone inquiry by OCI, the Boeing payroll department informed OCI that "it was possible that [plaintiff] was a contract employee." Id. at 37. Boeing also indicated that it did not have a record of employment for plaintiff. Id. at 38. OCI informed Boeing that it was required to file an Answer to the Writ of Garnishment. Id. at 38–39.

On September 27, 2006, OCI received a fax message with Boeing's First and Only Answer to the Writ of Garnishment, stating again that it had no record of employment for plaintiff. Id. at 44–45; see Dkt. #50 at 33. OCI tried to obtain location information for plaintiff from Boeing. Id. at 46. In March 2014, OCI tried to obtain location information for plaintiff

from CTS. Id. at 47–48. CTS informed Boeing that plaintiff's last date of employment with CTS was May 2013. Id. at 48.

On September 27, 2015, OCI determined that plaintiff worked for the United States Department of Transportation. Id. In the same month, on September 17, 2015, one of OCI's employees noted in plaintiff's Debtor History Report that the Judgment was due to expire on May 1, 2016. Ex. 4, Dkt. #110-1 at 19. In November 2015, OCI caused a Writ of Garnishment to be served on Boeing. Ex. 1, Dkt. #112-1 at 49; see Dkt. #50 at 36–38. On February 15, 2016, Martin signed a Writ of Garnishment for Continuing Lien on Earnings directed to the United States Department of Interior ("DOI"), which handles payroll services for several federal agencies, including the Federal Aviation Administration within the U.S. Department of Transportation. Dkt #112 at 55–57; see Dkt. #112 at 6; see Martin Decl. at ¶ 9; see Dkt. #32-2 at 7–9. "The year was improperly stated as 2015 because of a typographical error." Martin Decl. at ¶ 9. At the time of his signature, "there was time to have obtained garnishment funds well before the expiration of the judgment, assuming the writ was filed and served properly." Id. Plaintiff concedes that the judgment had not expired as of the date that the Writ of Garnishment was issued, i.e., February 15, 2015. Yohannes Dep. at 81:16–82:23.

The DOI filed a First Answer to Writ of Garnishment for Continuing Lien on Earnings in April 2016. Dkt. #32-2 at 10–12. Plaintiff was issued two checks by his employer in May. Yohannes Dep. at 95:23–96:12. The first check, in the amount of $623.71, was garnished. OCI received it on May 20, 2016 and deposited it. Id. at 94:1–7, 96:2–5, 98:3–15; see Ex. 1, Dkt. #112-1 at 73–74. OCI received the second check around June 10, 2016, in the amount of $673.72. Id. at 82. This was not deposited. Id. It was returned directly to the DOI. Id.

**D. Failure to Renew Judgment**

The garnishment was still in progress when the Writ expired on May 1, 2016. Martin Decl. at ¶ 9. OCI has a Legal Department Training Manual ("the Manual") that lists the steps for renewing a judgment. Ex. 8, Dkt. #110-1; see Ansari Decl. at ¶ 8. In 2009, OCI hired Kayla

Brown. Ansari Decl. at ¶ 8. On September 17, 2015, plaintiff's file was transferred from Ansari to Brown. Id. at ¶ 9. During the fall and winter of 2015, Brown was "having health issues and personal problems." Id. at ¶ 10. According to Ansari, her "inattention to [plaintiff's] file resulted in her failure to take the necessary steps to renew the judgment." Id. Ansari states that OCI had no intention not to renew the judgment. Id. Plaintiff testified that he became aware of the Judgment at the end of April in 2016. Yohannes Dep. at 79:6–16. He did not take any steps to have it set aside. Id. at 79:17–20.

On May 5, 2016, Ansari sent an email to Brown stating that it was too late to renew the Judgment and that he was not sure if they would "get everything" on the first garnishment. Ex. 4, Dkt. #110-1 at 21; see Ansari Dep. at 163:15–22. Brown responded on the same day, stating that she would "have to ask [Martin] – garn[ishment] was filed OK so there should be a way to extend it, as garn[ishment] is still running." Id. at 164:23–165:2; see Ex. 4, Dkt. #110-1 at 21; see Ex. 1, Dkt. #112-1 at 62; see Ex. 4, Dkt. #110-1 at 21. On the same day, OCI received a call from plaintiff requesting information about the Judgment. Ex. 1, Dkt. #112-1 at 63–64. Cable spoke with plaintiff. Ansari Decl. at ¶ 11. OCI did not inform plaintiff that the Judgment had expired. Ex. 1, Dkt. #112-1 at 64. On May 12, 2016, Brown sent an email to Cable that stated, "Could you maybe, possibly ask [Martin] if we can extend the [Judgment] after it has expired? Garn[ishment] was filed 04/06/2016 [and] [Judgment] filed 05/01/2006 (Garn[ishment] is running, may need to release)." Ex. 4, Dkt. #110-1 at 21–22; see Ansari Dep. at 165:3–16.

Cable testified that on May 16, 2016, she wrote, "Per Lee[2] [Martin], we have to release the judgment because the judgment expired prior to completions, and so we are not entitled to enter the JOA as no judgment is in force." Ex. 6, Dkt. #112-6 (Cable Dep.) at 15:14–18; see Martin Dep. at 46:8–21; see Ansari Dep. at 166:3–9. An email on May 16, 2016 states that OCI should have caught the error before the garnishment went out and that it is "normally good about tracking when a judgment would need to be renewed". Ex. 4, Dkt. #110-1 at 22. At some point,

---

[2] OCI's employees refer to Martin as "Lee." Martin Dep. at 45:20–23.

Cable called the Snohomish County District Court. Cable Dep. at 16:8–11. On May 20, 2016,
she wrote that she "called Lee [Martin], told him what the court said. Since there is no case law
and the court has one view, [] Lee said we are fine." Id. at 16:22–25. Accordingly, Cable put in,
"Since garn[ishment] release was not sent, we do not have to file the release. Let the
garn[ishment] run." Id. at 17:1–3.

**E. Release of Writ of Garnishment**

A note in plaintiff's Debtor History on May 24, 2016, states that the garnishment must be
released and refunded and that it "could result in a lawsuit against [OCI] quite easily." Ex. 4,
Dkt. #110-1 at 24. Martin authorized OCI to use his signature stamp on Writ of Release
documents so that they could be prepared and filed or delivered immediately. Ansari Decl. at ¶
12. The Writ of Release for plaintiff's account was prepared on May 24, 2016. Martin Decl. at
¶¶ 9–10; see Ex. 4, Dkt. #109-1. Martin stated that the Writ of Release "is the only pleading on
which certain persons at [OCI] are authorized to use [his] signature stamp." Id. at ¶ 11; see
Cable Dep. at 10:25–11:5. The Writ of Release is dated May 24, 2016, and stamped May 26,
2016. Yohannes Dep. at 93:7–25.

The amount of $623.71 was refunded to him in the same month. Id. at 96:6–97:3, 98:16–
17. On May 24, 2016, Ansari sent a letter to plaintiff enclosing the Writ of Release and a check
for the $623.72 received on the garnishment on May 20, 2016. Ex. 6, Dkt. #110-1. The letter
also states that the Release was sent to plaintiff's employer. Id. Plaintiff deposited OCI's check
on June 27, 2016. Id. at 99:8–100:3. Plaintiff testified that OCI did not actually obtain any
money from him. Id. at 15:8–11. Ansari sent another letter on June 20, 2016, enclosing the Writ
of Release, a deletion request to plaintiff's credit bureau, and a copy of the letter dated May 24,
2016. Ex. 7, Dkt. #110-1. It states that OCI has not kept any funds on the matter and is not
attempting to collect on it. Id.

### F. Cable's Communications with DOI

Prior to the execution of the Writ of Release, Cable states that she received calls from Steve Burpee, an employee at the DOI, on May 18, 10216. Dkt. #111 (Cable Decl.) at ¶ 4. Burpee was "communicating about the garnishment of [plaintiff], and his objection thereto." Id. Plaintiff alleges that Cable represented herself as an attorney to the DOI. Yohannes Dep. at 25:8–10. He did not personally hear this alleged misrepresentation. Id. at 25:11–26:1, 29:7–12. He refers instead to an email sent to him by Steve Burpee on May 18, 2016, which states, "After conversations with Susan Cable … legal manager, [OCI], it has been determined that the garnishment is legal and will continue to be enforced." Dkt. #49-1 at 2.

### G. Procedural History

Plaintiff filed his initial complaint on March 31, 2017. Dkt. #1. He filed an Amended Complaint on December 29, 2017. Dkt. #32. He brings eleven causes of action. Count 1 asserts that defendants made false or misleading representations. Am. Compl. at ¶¶ 125–127; see 15 U.S.C. § 1692e(10). Count 2 asserts that defendants impermissibly impersonated an attorney. Am. Compl. at ¶¶ 128–133; see 15 U.S.C. § 1692e(3). Count 3 asserts that OCI, Ansari and Cable impermissibly communicated with third parties in connection with the collection of plaintiff's debt. Am. Compl. at ¶¶ 134–137; see 15 U.S.C. § 1692c(b). Count 4 asserts that defendants engaged in the unauthorized practice of law. Am. Compl. at ¶¶ 138–143; see 15 U.S.C. § 1692e(9). Count 5 asserts that defendants collected and attempted to collect unauthorized amounts from plaintiff. Am. Compl. at ¶¶ 144–146; see 15 U.S.C. § 1692f(1); see RCW 19.16.250(21). Count 6 asserts that defendants falsely represented the character, amount or legal status of plaintiff's debt. Am. Compl. at ¶¶ 147–149; see 15 U.S.C. § 1692e(2)(A).

Count 7 asserts that defendants violated the Washington Consumer Protection Act ("CPA"). Am. Compl. at ¶¶ 150–156; see RCW 19.86. Count 8 asserts a § 1983 constitutional claim against all defendants in their obtaining of the Judgment against plaintiff in the Snohomish County District Court. Am. Compl. at ¶¶ 157–172; see 42 U.S.C. § 1983. Count 9

asserts an abuse of process claim against all defendants. Am. Compl. at ¶¶ 173–178. Count 10

asserts a common law defamation claim against all defendants. Id. at ¶¶ 179–180. Count 11

asserts a common law fraud claim against all defendants. Id. at ¶¶ 181–188. Finally, plaintiff

challenges the constitutionality of RCW 6.27, Washington's garnishment statute. Id. at ¶¶ 99–

122. Specifically, his challenge is levied at RCW 6.27.020, which permits a writ of garnishment

to be issued by either clerks or attorneys of record for the judgment creditor. Id. at ¶¶ 99–100.

All dispositive motions were required to be filed by July 9, 2019 and noted for no later

than the fourth Friday thereafter. Dkt. #73; see LCR 7(d)(3). Each of the four defendants filed

their own motion for summary judgment[3] on all claims, on July 1, 2019. Dkts. #104–107.

Plaintiff filed a motion for partial summary judgment on Counts 1–7 and 9 one day after the

deadline on July 10. 2019. Dkt. #112. Plaintiff did not move for an extension of the deadline. Id.

Plaintiff then filed a motion for declaratory judgment[4] on July 15, 2019, requesting the Court to

---

[3] Plaintiff argues both in his "Consolidated Response to Defendants['] Motions for Summary Judgment", see Dkt. #121 at 7, and in his "Cross Motion for Protective Order", see Dkt. #122 at 6–7, that this was a violation of LCR 7(e)(3). That Rule states, "Absent leave of the court, a party must not file contemporaneous dispositive motions, each one directed toward a discrete issue or claim." LCR 7(e)(3). "This rule serves to prevent a single party from filing contemporaneous motions in an effort to circumvent the page length requirements governing dispositive motions." BWP Media USA Inc. v. Rich Kids Clothing Co., LLC, No. C13-1975-MAT, 2015 WL 347197, at *7 (W.D. Wash. Jan. 23, 2015), aff'd sub nom. BWP Media USA Inc. v. Urbanity, LLC, 696 F. App'x 795 (9th Cir. 2017)). That is not the case here. Each defendant filed an individual motion for summary judgment. Dkts. #104–107. Plaintiff's "Cross Motion for Protective Order", see Dkt. #122, is accordingly DENIED.

[4] Defendants filed a "Motion for Protective Order, Relief from a Deadline, and Attorney Fees Pursuant to 28 U.S.C. § 1927" on July 18, 2019. Dkt. #117. Defendants argued that plaintiff's motions had been filed past the Court's deadline and were a violation of LCR 7(e)(3). Id. at 1. Initially, plaintiff filed his motion for partial summary judgment on July 10, 2019, and a second motion for partial summary judgment (docketed as "Second" and "Third" motions for partial summary judgment due to a prior motion filed by plaintiff on February 26, 2018, see Dkts. #41, #63) on July 15, 2019. Defense counsel contacted plaintiff and advised him that he was in violation of LCR 7(e)(3). Dkt. #118 (Rosenberg Decl.) at ¶ 4. Plaintiff responded that he would change the title of his second motion to "Motion for Declaratory Judgment" and asserted that the "real party in interest" was the State of Washington. Id. at ¶ 5; see Ex. 1, Dkt. #118-1 at 3–5. Following additional communications, plaintiff withdrew his second motion on July 14, 2019, see Dkt. #114, and filed a new "Motion for Declaratory Judgment" the next day, on July 15, 2019. Dkt. #115. In their motion for a protective order, defendants moved to strike both the motion for partial summary judgment and the motion for declaratory judgment

declare the power delegated to attorneys of judgment creditors under Washington's garnishment statute unconstitutional. Dkt. #115.

## DISCUSSION

### A. Legal Standard

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The proper question … is whether, viewing the facts in the non-moving party's favor, summary judgment for the moving party is appropriate." Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citing Arizona ex rel. Horne v. Geo Grp., Inc., 816 F.3d 1189, 1207 (9th Cir. 2016)). "[W]here evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is inappropriate for resolution on summary judgment.'" Id. (quoting Direct Techs., LLC v. Elec. Arts, Inc., 836 F.3d 1059, 1067 (9th Cir. 2016)).

"The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." Kirchoff v. Wipro, Inc., 894 F. Supp. 2d 1346, 1348 (W.D. Wash. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "In support of its motion for summary judgment, the moving party need not negate the opponent's claim …; rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent …" Id. (internal citations omitted). "When the record, taken as a

---

and requested attorney's fees. Dkt. #117 at 5; see 28 U.S.C. § 1927. The motions are untimely, and plaintiff has not made a showing of excusable neglect. See Fed. R. Civ. P. 6(b). Rather, he argues that he is not in violation of the Court's scheduling order because his motion for declaratory judgment is noted for the third Friday after filing, while his motion for summary judgment is noted for the fourth. Dkt. #122 at 4. He also argues that his motion for declaratory judgment challenges the constitutionality of RCW 6.27, and is therefore not directed against defendants. Id. at 4–5. The Court disagrees. However, in the interest of resolving the case on its merits, the Court will consider plaintiff's motions and the arguments made therein in this order. Finally, "[t]he award of § 1927 sanctions is "committed to the sound discretion of the district court." Marshall v. Washington State Bar Ass'n, No. CV-11-5319 SC, 2012 WL 2979021, at *2 (W.D. Wash. July 20, 2012) (citation omitted). The Court declines to impose sanctions. Defendants' motion for a protective order is accordingly DENIED. The Court does, however, appreciate the timeliness of defendants' responses under the circumstances. See Dkt. #129, #130.

whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted." Id. at 1348–49 (citing Beard v. Banks, 548 U.S. 521, 529 (2006)). Evidence submitted must satisfy the requirements of Federal Rule of Civil Procedure 56. Block v. City of Los Angeles, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing Celotex, 477 U.S. at 324). This means that any affidavits must be made on personal knowledge, set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. Id. (citing Fed. R. Civ. P. 56(e)).

## B. Count 1: False or Misleading Representations

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This includes the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Id. at § 1692e(10). This sub-section "has been referred to as a 'catchall' provision, and can be violated in any number of novel ways." Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1062 (9th Cir. 2011) (citing Rosenau v. Unifund Corp., 539 F.3d 218, 224 (3d Cir. 2008)). In determining whether it has been violated, "a court must use 'an objective analysis that takes into account whether the least sophisticated debtor would likely be misled by a communication.'" Smyth v. Merchants Credit Corp., No. 2:12-CV-00130-MJP, 2012 WL 2343031, at *2 (W.D. Wash. June 19, 2012) (quoting Donohue y. Quick Collect, Inc., 592 F.3d 1027, 1030 (9th Cir. 2010)).

Plaintiff testified that, as against Martin, this pertains to the use of a stamp instead of his signature, as well as his failure to "check[] that there [was] enough evidence to support the claims when he file[d]" the lawsuit. Yohannes Dep. at 139:13–140:3. As against Cable, the claim pertains to her alleged communications with the DOI. He refers to Burpee's email, which states that the DOI determined the garnishment was legal after conversations with Cable, the "legal manager" of OCI. Id. at 144:8–16, 149:25–150:2; see Dkt. #49-1 at 2. Plaintiff did not hear Cable say so. Id. at 144:18–20. He also argues that Cable "succeeded in influencing the DOI to reverse the decision it made to stop the enforcement of the garnishment." Dkt. #112 at

20. As against Ansari, plaintiff testified that he never had any communications with Ansari himself, but that Ansari "falsely told the Consumer Financial Credit Bureau that the judgment expired in June, whereas it actually expired in May." Yohannes Dep. at 151:2–9. Plaintiff also claims that OCI did not make any statements to plaintiff, but that it and its employees "concealed the judgment until it was about to expire". Id. at 145:13–146:2. Specifically, plaintiff disputes the service of process on March 26, 2006, id. at 154:17–156:7, and he claims that the Judgment was mailed to the wrong address. Id. at 146:12–147:1.

"In Washington, a 'facially correct return of service is presumed valid and, after judgment is entered, the burden is on the person attacking the service to show by clear and convincing evidence that the service was irregular.'" Mandelas v. Gordon, 785 F. Supp. 2d 951, 956 (W.D. Wash. 2011) (quoting Woodruff v. Spence, 88 Wn. App. 565 (1997)). The Declaration of Service filed by Delys is facially correct. Dkt. #32-2 at 5. Plaintiff claims only that the estimates of his height and weight in the Declaration of Service are incorrect. He acknowledges that everything else was accurate. Yohannes Dep. at 72:6–73:10. He also confirmed that the phone number listed was his. Id. at 68:15–16. Any change in address by OCI is therefore irrelevant. See Dkt. #32-3 at 8. There is no evidence that defendants concealed the lawsuit in the Snohomish County District Court or the Judgment. Even though the motion for default judgment erroneously listed the Wendy's address as plaintiff's residential address, see Ex. 4, Dkt. #109-1, plaintiff concedes that the Judgment was on file with the Snohomish County District Court at the time, and that he could have obtained it. Yohannes Dep. at 146:3–11. Plaintiff has not shown that this error was material or that he was misled by it. Donohue, 592 F.3d at 1033. Plaintiff also argues that OCI sent the Writs of Garnishment to an incorrect address, and that they were returned with an "insufficient address stamp" from the post office. Ansari Dep. at 176:4–178:23. Ansari admitted that this was an error despite the procedures that OCI had in place. Id. at 178:11–180:22. But this does not give rise to a sustainable § 1692e(10) claim. See Donohue, 592 F.3d at 1033; see 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a

preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."); <u>see</u> Section D, *infra*.

Plaintiff admits that he has no personal knowledge of any representations made by Cable to the DOI. Yohannes Dep. at 25:11–26:1, 28:19–29:13. "[H]earsay evidence is inadmissible and may not be considered by this court on review of a summary judgment." <u>Blair Foods, Inc. v. Ranchers Cotton Oil</u>, 610 F.2d 665, 667 (9th Cir. 1980) (citation omitted). Cable stated that she did not at any time represent to anyone at the DOI that she was an attorney or do anything to suggest that she was acting in the capacity of an attorney. Cable Decl. at ¶ 4. Plaintiff, too, admits that a "legal manager" is distinct from a "lawyer." Yohannes Dep. at 151:18–21. Even if she had done so, this would not constitute a material representation. "[F]alse but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." <u>Donohue</u>, 592 F.3d at 1033. There is no evidence that it misled plaintiff, or even the DOI. Yohannes Dep. at 159:16–24, 169:18–25.

Nor did Cable use a "false representation or deceptive means" to attempt to collect plaintiff's debt. 15 U.S.C. § 1692e(10). Regardless, even if the Court assumes that Cable was aware that the Judgment could not be renewed, all that Burpee stated in his email—leaving aside the hearsay issues—was that the DOI determined the garnishment was legal after a conversation with Cable. Dkt. #49-1 at 2. Plaintiff has produced no evidence of Cable making any misrepresentations regarding the Judgment, its validity, or its expiry date, whether from her deposition or the notes in plaintiff's Debtor History. Ex. 4, Dkt. #110-1 at 22. See <u>Erez v. Steur</u>, No. C12-2109RSM, 2014 WL 6069847, at *4 (W.D. Wash. Nov. 13, 2014) ("Plaintiff has not provided this Court with any persuasive legal analysis demonstrating that Defendants violated § 1692e(10)"); <u>Hylkema v. Associated Credit Serv. Inc.</u>, No. C11-0211-MAT, 2012 WL 13681, at *9 (W.D. Wash. Jan. 4, 2012). Nor has plaintiff shown how he was misled by any purported misrepresentations made to the DOI. <u>McLain v. Gordon</u>, No. C09-5362BHS, 2010 WL 3340528, at *7 (W.D. Wash. Aug. 24, 2010). Without any evidence from plaintiff, the Court

cannot speculate as to what Cable may or may not have said and what effect it had.[5] Regarding Cable's "managerial responsibility for OCI", Am. Compl. at ¶ 126, the Ninth Circuit has held that, "because the FDCPA imposes personal, not derivative, liability, serving as a shareholder, officer, or director of a debt collecting corporation is not, in itself, sufficient to hold an individual liable as a 'debt collector.'" Moritz v. Daniel N. Gordon, P.C., 895 F. Supp. 2d 1097, 1109 (W.D. Wash. 2012) (citation omitted).

Any communication made by Ansari to the Consumer Financial Credit Bureau regarding the date that the Judgment expired occurred in 2017, after the present lawsuit had commenced. Yohannes Dep. at 151:2–13; Ansari Dep. at 172:10–173:8. It was not, therefore, a "means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Nor was it material. Donohue, 592 F.3d at 1033. Like Cable, Ansari is not liable in his capacity as President of OCI. Moritz, 895 F. Supp. 2d at 1109.

Any purported failure by Martin to verify plaintiff's debt prior to filing the lawsuit or Writs of Garnishment does not have any bearing on plaintiff's claim that Martin "use[d] … any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. at § 1692e(10). Plaintiff states in his complaint that Martin allowed others to forge his signature and testified that Martin's signatures on different court documents looked different to him, but he admitted that he did not actually see who signed the documents. Yohannes Dep. at 38:18–21. Plaintiff is not a handwriting expert. Id. at 39:4–5. Martin testified that he does not allow anyone to physically sign court documents on his behalf. Martin Dep. at 36:23–37:2. A signature "includes any memorandum, mark, or sign made with intent to authenticate any instrument or writing, or the subscription of any person thereto." RCW 9A.04.110. The use of a signature stamp on Writs of Release does not give rise

---

[5] Furthermore, according to the Debtor History, Martin only confirmed on May 24, 2016 that the garnishment needed to be released; i.e., after Cable's communications with the DOI. Id. at 24. Prior to that, Martin informed Cable on May 20, 2016 that OCI did not need to file a release. Cable Dep. at 16:22–25. See 15 U.S.C. § 1692k(c); see Section D, infra.

to a § 1692e(10) claim against Martin, who stated that he personally signed all other pleadings filed in the lawsuit. Martin Decl. at ¶ 11. He authorized OCI to use the stamp as an "accommodation to a debtor or to the bankruptcy attorney." Martin Dep. at 37:6–38:19; see id. at 38:20–4; see Ansari Dep. at 122:15–124:25. Plaintiff testified that he did not personally suffer any harm due to the use of a stamp rather than a signature. Id. at 47:17–24. He was not misled.

An assignee for collection purposes has standing to bring suit where the assignment transfers absolute title in the claim. Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 273 (2008). It is not clear whether plaintiff's argument regarding the invalidity of the assignment of the debt from Baker Dental to OCI is incorporated in Count 1. See Dkt. #112 at 8–10; see Dkt. #121 at 7–9.[6] In an abundance of caution, however, see Nogali v. Transcon Fin., Inc., No. EDCV1400206VAPDTBX, 2015 WL 12656934, at *12 (C.D. Cal. Aug. 12, 2015), the Court concludes that plaintiff has introduced no evidence to show that the assignment was fraudulent. Defendants have produced the assignment. Ex. 1, Dkt. #110-1. OCI verified the debt in response to plaintiff's request on February 1, 2006. Ex. 4, Dkt. #110-1 at 12. Dr. Baker and Dr. Song are unable to produce any contractual agreements that they had with OCI, but that does not mean that the assignment was never executed. These events took place in 2006, more than a decade ago. Ex. 2, Dkt. #112-2 at 2; Ex. 3, Dkt. #112-3 at 2. Similarly, plaintiff's observation that his balance of $389.03 was sent for collection on August 15, 2003, does not negate the assignment of the claim to OCI almost three years later. Ex. 2, Dkt. #112-2 at 11; see Martin Dep. at 21:16–22:15, 24:12–20. Nor does the failure to identify the Financial Coordinator. Dkt. #112 at 9. Plaintiff also claims that Baker Dental was sold to Dr. Song in December 2005, was administratively dissolved on July 3, 2006, and was reinstated at an address in Mount Vernon, Washington on August 30, 2006. Yohannes Decl. at ¶ 8. Plaintiff provides no evidence for Baker Dental's dissolution or reinstatement, and regardless, the assignment is dated February 14, 2006. Ex. 1, Dkt. #110-1. OCI's records show receipt of it on February 21, 2006. Ex. 4, Dkt. #110-1 at 12; see also Martin Dep. at 26:17–27:4.

---

[6] Plaintiff's arguments refer only to 15 U.S.C. § 1692e(5) and (2)(A). Id.

Finally, plaintiff argues that he was charged excessive interest by OCI. Dkt. #112 at 13-14. The Court finds that the interest calculations were correct, and that defendants' conduct did not constitute a "false representation or deceptive means" of collecting the debt under 15 U.S.C. § 1692e(10). The complaint filed in the Snohomish County District Court requests interest in the amount of $122.53. Ex. 1, Dkt. #109-1. It states that statutory interest has accrued at 12% per annum from January 5, 2006. Id. Defendants admitted that the interest on the debt from January 5, 2006 to the date of the filing of the complaint did not equal $122.53. Ex. 1, Dkt. #112-1 at 15. However, according to Martin, the interest accrued from the date the debt was incurred, in 2002 and 2003. Martin Decl. at ¶ 12; see Martin Dep. at 17:4–18:3. Martin testified that prejudgment interest began to run from when plaintiff received services from Baker Dental. Id. at 18:18–8; 32:25–4. This does not give rise to a § 1692e(10) claim. See Donohue, 592 F.3d at 1033 ("The Complaint did not contain a false, deceptive, or misleading representation for purposes of liability under §§ 1692e or 1692f just because $32.89, labeled as 12% interest on principal, was actually comprised of finance charges of $24.07 and post-assignment interest of $8.82, but not labeled as such.").

As the remaining defendants are not liable, OCI is not vicariously liable for any of their actions, either. See Etherage v. West, No. C11-5091BHS, 2011 WL 1930644, at *3 (W.D. Wash. May 19, 2011) ("Our case law makes clear that, once an employee's underlying tort is established, the employer will be held vicariously liable if the employee was acting within the scope of his employment.") (quoting Robel v. Roundup Corp., 148 Wn. 2d 35, 52–52 (2002)).[7]

---

[7] Plaintiff did not refer to § 1692g(b) in his complaint, but he argues in his motion for partial summary judgment that defendants impermissibly attempted to collect on the debt after plaintiff disputed it. Dkt. #112 at 10–11. That sub-section provides: "If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b) (emphasis added). "At the minimum, verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." Clark v. Capital Credit & Collection Servs., Inc.,

### C. Count 2: Impersonation of an Attorney

While Count 2 is directed in plaintiff's complaint against all defendants, <u>see</u> Am. Compl. at ¶¶ 129–132, plaintiff testified that it pertains only to Cable's alleged representation of herself as an attorney to the DOI and the use by OCI employees of Martin's signature stamp. Yohannes Dep. at 159:1–7. Regardless, the Court reiterates that Ansari is not liable for any purported misconduct under § 1692e(3), if he was even aware of it. <u>Moritz</u>, 895 F. Supp. 2d at 1109; <u>see</u> Ansari Decl. at ¶ 16; <u>see</u> Am. Compl. at ¶ 131.

As previously discussed, plaintiff has not introduced any evidence to show that Cable represented to the DOI that she was an attorney. He has no personal knowledge of the matter, Yohannes Dep. at 159:8–15, and even Burpee's email only refers to Cable as a "legal manager." <u>Id.</u> at 159:16–24. Regarding Martin, plaintiff has produced no evidence to show any conduct amounting to a "false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). Even if the Court assumes, as plaintiff urges, that the unauthorized use of a signature stamp may give rise to liability, Martin testified that he signed all pleadings except the Writ of Release himself and authorized an employee to use the stamp on plaintiff's Writ of Release. Martin Decl. at ¶¶ 9, 11. The Writ of Release form was approved and drafted by Martin. <u>Id.</u> at ¶ 10.

### D. Count 3: Communications with Third Parties

Count 3 asserts that defendants impermissibly communicated with third parties. 15 U.S.C. § 1692c(b) states:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post[]judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any

---

460 F.3d 1162, 1173–74 (9th Cir. 2006). Plaintiff requested that OCI verify the debt on January 31, 2006. Ex. 4, Dkt. #110-1 at 12. The record shows that OCI sent the verification to plaintiff the next day. <u>Id.</u> The fact that OCI does not currently possess contact information for Dr. Baker does not mean that it was unable to verify the debt in 2006. <u>See</u> Dkt. #112 at 11–12.

debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Defendants argue, and plaintiff concedes, that Cable's communications with the DOI were for the purpose of enforcing the Judgment. Yohannes Dep. at 174:23–175:1, 207:15–19, 208:6–16; see Dkt. #106 at 9–10. That is protected under the statute. 15 U.S.C. § 1692c(b).[8] All of defendants' contacts with Boeing were also, at the time, "reasonably necessary to effectuate a post judgment judicial remedy." Id.

However, to the extent that Cable's attempt to enforce the Judgment was the result of an error regarding the expiration of the Judgment, her communications with the DOI are protected by the bona fide error defense. "The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof." Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002, 1006 (9th Cir. 2008) (citing Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1514 (9th Cir. 1994)). "[T]o qualify for the bona fide error defense, the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 948 (9th Cir. 2011). There is a two-step inquiry: (1) whether the debt collector actually employed or implemented procedures to avoid errors, and (2) whether the procedures were reasonable adapted to avoid the specific error at issue. Reichert, 531 F.3d at 1006 (citing Johnson v. Riddle, 443 F.3d 723, 729 (10th Cir. 2006)).

Plaintiff could not identify any reason why OCI would have intentionally not renewed the Judgment. Yohannes Dep. at 80:20–24. He admitted that he does not have any support for his contention that OCI purposely allowed the Judgment to lapse. Id. at 201:22–202:11. All defendants stated that they did not have any ulterior motive in pursuing garnishment

---

[8] There is no evidence of Ansari or Martin communicating with the DOI. Nor does plaintiff allege that they did so. Am. Compl. at ¶ 136. Ansari is not liable as the President of OCI, and plaintiff's claim that Martin allowed Cable to do "his job" is unfounded and irrelevant. Moritz, 895 F. Supp. 2d at 1109; see Yohannes Dep. at 175:2–10, 205:8–11, 205:13:14, 206:3–9.

proceedings against plaintiff and held no personal animosity toward him. Ansari Decl. at ¶ 14; Cable Decl. at ¶ 2; Martin Decl. at ¶ 2. The entries in plaintiff's Debtor History indicate that defendants attempted to rectify the error soon after learning of it. Ex. 4, Dkt. #110-1 at 21–22. The error was unintentional. <u>Lemarr v. Credit Int'l Corp.</u>, No. C16-33RAJ, 2016 WL 3067719, at *5 (W.D. Wash. May 31, 2016).

Defendants have explained the procedures and the "manner in which they were adapted to avoid the error." <u>Reichert</u>, 531 F.3d at 1007. OCI uses Outlook and a calendaring system to track activities for its files, as well as a program called Debtmaster Professional to "manage and record events for each specific file." Ansari Decl. at ¶ 5. "Dates that judgments expire are put on the [O]utlook calendaring system for the person handling the file along with a reminder date 90 to 100 days before the judgment expiration date." <u>Id.</u> If the judgment is scheduled to expire, Ansari "note[s] that information on the Debtmaster Debtor History Report file. This informs the case handler that they need to take steps to renew the judgment if the debt is not paid in full prior to the judgment expiring." <u>Id.</u> at ¶ 6. OCI's Legal Department Training Manual lists the steps for renewing a judgment. <u>Id.</u> at ¶ 8; <u>see</u> Ex. 8, Dkt. #110-1. These procedures have been in place since prior to 2009. <u>Id.</u> at ¶ 10. Ansari stated that they have worked since he took over ownership of the business in 2005, and that OCI has not "had any other instance where [it] failed to renew a judgment." <u>Id.</u> Defendants have shown that they employed procedures reasonably adapted to avoid the specific error of collecting on a judgment after it had expired. <u>Erez</u>, 2014 WL 6069847 at *4.

## E. Count 4: Unauthorized Practice of Law

Count 4 alleges that all defendants engaged in the unauthorized practice of law. Am. Compl. at ¶¶ 138–143; <u>see</u> RCW 19.16.250(5). Plaintiff also argues that defendants violated the FDCPA, which prohibits "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." 15 U.S.C. § 1692e(9); <u>see</u> Am. Compl. at ¶ 143. He

claims that defendants impermissibly drafted legal documents and presented the Writ of Garnishment and Notice to Federal Government as official court documents even though they were not signed by Martin.

The Court has already found that plaintiff has failed to produce evidence to show that Cable misrepresented herself as an attorney in her communications with the DOI. See Dkt. #112 at 20–21. Plaintiff testified that Ansari selected which legal forms to use for specific purposes and had documents drafted, completed and stamped by OCI employees. Yohannes Dep. at 189:24–190:3, 191:17–192:13. "The practice of law includes … the preparation of legal instruments and contracts by which legal rights are secured. … More particularly … where one determines for the parties the kinds of legal documents they should execute to effect their purpose, such is the practice of law." Hecomovich v. Nielsen, 10 Wn. App. 563, 571 (1974) (citations omitted). However, Martin, an attorney, authorized the use of his signature stamp on the Writ of Release. Ansari Decl. at ¶ 11. The Writ of Release form was approved and drafted by Martin for use in situations like this one. Martin Decl. at ¶ 10. The Writ of Release is also the only pleading on which OCI employees are authorized to use his signature stamp. Id. at ¶ 11.

Plaintiff provides no evidence that the Writs were falsely represented as official court documents where they were not recorded in the state court docket and the required fees were not paid. See Dkt. #112 at 16. He questioned defendants extensively on the court file stamps on each document and the payment of fees, but he fails to create a triable issue of fact regarding any false representation. Fed. R. Civ. P. 56(a); see Martin Dep. at 7:12–9:8; see Ansari Dep. at 31:13–33:11, 50:23–52:3, 86:18–88:11, 90:17–91:8, 135:11–141:4, 153:5–18. To the extent that there were errors, they were not material, and plaintiff has not shown that he was misled by them. Donohue, 592 F.3d at 1033; see Dorner v. Commercial Trade Bureau of Cal., No. CIVF080083AWISMS, 2008 WL 1704137, at *4 (E.D. Cal. Apr. 10, 2008) ("In reference to misleading implication of government involvement, the few cases which address this provision generally limit findings of violations of § 1692e(9) to situations where the debt collector overtly impersonates a governmental agency, or where the debt collector attempts to hide its identity by

using a false alias.") (citation and internal quotation marks omitted). Nor does he substantiate his claim that the Manual guides employees in the unauthorized practice of law, leaving aside the late stage at which he raises this claim. See Ex. 8, Dkt. #110-1.

### F. Counts 5 and 6: Unauthorized Collection and False Representation

Count 5 alleges that defendants violated 15 U.S.C. § 1692f(1), which prohibits the collection of any amount unless the amount is "expressly authorized by the agreement creating the debt or permitted by law." Am. Compl. at ¶¶ 144–146; see also RCW 19.16.250(21). Count 6 alleges that defendants falsely represented the character, amount or legal status of the debt, specifically in communications with the DOI after the Judgment had expired. Am. Compl. at ¶¶ 147–149; see 15 U.S.C. § 1692e(2)(A). To the extent these allegations have any merit, the conduct complained of is protected by the bona fide error defense. See Section D, *supra*; see Campion v. Credit Bureau Servs., Inc., 206 F.R.D. 663, 674 (E.D. Wash. 2001) (concluding that the bona fide error defense applies to claims under the Washington Collection Agency Act).

### G. Count 7: Violation of Washington's Consumer Protection Act

"To establish a CPA violation, the plaintiff must prove five elements: (1) an unfair or deceptive act or practice that (2) occurs in trade or commerce, (3) impacts the public interest, (4) and causes injury to the plaintiff in her business or property, and (5) the injury is causally linked to the unfair or deceptive act." Michael v. Mosquera-Lacy, 165 Wn. 2d 595, 602 (2009) (citation omitted). Plaintiff argues that defendants' "collection attempts" are unfair acts or practices. Am. Compl. at ¶ 152. To the extent plaintiff bases this claim on any unauthorized practice of law, see Yohannes Dep. at 209:12–20, see Dkt. #112 at 20–24, the Court has already concluded that plaintiff has failed to introduce evidence to that effect. As previously discussed, the calculation of the interest amount does not give rise to a CPA claim, either. Id. at 209:21–25. Nor does plaintiff introduce evidence to show that he suffered any injury due to this alleged misconduct. Id. at 47:17–24, 105:21–106:1, 107:3–22. The Court therefore need not reach defendants'

argument regarding Martin's litigation privilege, but notes that plaintiff did not refute it, <u>see</u> Dkt. #112, Dkt. #121.

### H. Count 8: Constitutional § 1983 Claim

"To state a claim under 42 U.S.C. [§] 1983, a plaintiff must allege that (1) the defendant was acting under color of state law at the time the acts complained of were committed, and that (2) the defendant deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." <u>Briley v. State of Cal.</u>, 564 F.2d 849, 853 (9th Cir. 1977).

Defendants did not act under color of state law. As previously discussed, they did not file false affidavits or otherwise deceive the Snohomish County District Court and cause the issuance of a fraudulent default judgment. Am. Compl. at ¶¶ 162–163. Contrary to plaintiff's arguments, <u>see</u> Yohannes Dep. at 211:12–213:25, "[o]nly where the private party makes use of state collection procedures with the 'overt, significant assistance' of state officials may state action be found." <u>Seattle Fishing Servs., LLC v. Bergen Indus. & Fishing Corp.</u>, No. C04-2405RSM, 2005 WL 1427697, at *3 (W.D. Wash. June 15, 2005), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Seattle Fishing Servs. LLC v. Bergen Indus. & Fishing Co.</u>, 242 F. App'x 436 (9th Cir. 2007) (quoting <u>Tulsa Professional Collection Services v. Pope</u>, 485 U.S. 478, 486 (1988)). "The action of the court clerk in accepting and filing the writs of garnishment is not [this] type of significant, overt assistance." <u>Id.</u>

### I. Counts 9, 10 and 11: Abuse of Process, Defamation and Fraud

"To prove the tort of abuse of process, a plaintiff must show both (1) the existence of an ulterior purpose to accomplish an object not within the proper scope of the process, and (2) an act in the use of legal process not proper in the regular prosecution of the proceedings." <u>Vargas Ramirez v. United States</u>, 93 F. Supp. 3d 1207, 1232 (W.D. Wash. 2015) (citation and internal quotation marks omitted). Plaintiff has not shown any ulterior motive on the part of defendants or any intent by them to allow the Judgment to expire. Ansari Decl. at ¶ 14; Cable Decl. at ¶ 2; Martin Decl. at ¶ 2; <u>see</u> Yohannes Dep. at 80:20–24, 201:22–202:11.

Plaintiff's defamation claim pertains to Cable's communications with the DOI. Id. at 228:23–232:2. As previously discussed, plaintiff admits that he has no personal knowledge of any representations made by Cable to the DOI. Id. at 25:11–26:1, 28:19–29:13; see Blair Foods, 610 F.2d at 667. The Court also notes that "[a]llegedly libelous statements, spoken or written by a party or counsel in the course of a judicial proceeding, are absolutely privileged if they are pertinent or material to the redress or relief sought, whether or not the statements are legally sufficient to obtain that relief." McNeal v. Allen, 95 Wn. 2d 265, 267 (1980); see Am. Compl. at ¶ 180. Furthermore, Ansari sent plaintiff a letter on June 20, 2016, enclosing the Writ of Release and a deletion request to plaintiff's credit bureau. Ex. 7, Dkt. #110-1; see Yohannes Dep. at 231:10–24.

"The nine elements of fraud are: (1) representation of existing fact, (2) materiality of the representation, (3) falsity, (4) the speaker's knowledge of its falsity, (5) the intent of the speaker that representation be acted upon by the plaintiff, (6) plaintiff's ignorance of its falsity, (7) plaintiff's reliance on the truth of the representation, (8) plaintiff's right to rely on the representation, and (9) resulting damages." Brummett v. Washington's Lottery, 171 Wn. App. 664, 675 (2012). In Count 11, plaintiff alleges that defendants concealed material facts from him regarding the Judgment and Writ of Garnishment. Am. Compl. at ¶¶ 182–185. The Court reiterates that plaintiff has not shown that defendants committed any false and material representations, let alone that they did so knowingly. The Court also notes that, to the extent plaintiff's claim pertains to statements made in the course of the judicial proceedings, these statements are privileged. McNeal, 95 Wn. 2d at 267.

**J. Constitutionality of Washington's Garnishment Statute**

The Court has already found that defendants were not acting under color of state law. See Dkt. #115 at 5–13; Dkt. #130 at 4–6. In his motion for declaratory judgment, plaintiff also challenges the constitutionality of RCW 6.27.020, which states:

> (1) The clerks of the superior courts and district courts of this state may issue writs of garnishment returnable to their respective courts for the benefit of a judgment creditor

who has a judgment wholly or partially unsatisfied in the court from which the garnishment is sought.

(2) Writs of garnishment may be issued in district court with like effect by the attorney of record for the judgment creditor, and the form of writ shall be substantially the same as when issued by the court except that it shall be subscribed only by the signature of such attorney.

Plaintiff argues that this provision is unconstitutional because it gives judgment creditors the power to seize property without any notice or hearing, fails to provide equal protection under the law, denies "a class of citizens a fair, impartial, and neutral hearing before they are deprived of their property", and empowers debt collectors to indulge in abusive debt collection practices. Dkt. #115 at 13. In determining the constitutionality of this provision, the Court considers: "[1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

RCW 6.27.020 passes this test. Debtors have an interest in protecting their property from being erroneously garnished. However, creditors also have an interest in the recovery of their debt. See Tift v. Snohomish Cty., 764 F. Supp. 2d 1247, 1254 (W.D. Wash. 2011) ("The creditor has a strong interest in prompt and inexpensive satisfaction and collection of the judgment since delay may result in the debtor's disposition of the property or diminution of its value. … The debtor has a legitimate interest in protecting exempt property from seizure.") (internal citation omitted). There are adequate safeguards built into the statute. See RCW 6.27.100, 6.27.130, 6.27.150, 6.27.180, 6.27.210, 6.27.230. The government, too, has an interest in enforcing the judgments of its own courts. See Brown v. Liberty Loan Corp. of Duval, 539 F.2d 1355, 1363 (5th Cir. 1976). The Court is not persuaded that plaintiff's substitute procedures are necessary. Plaintiff is not entitled to an injunction preventing attorneys from issuing writs of garnishment, either. See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 886 F.3d 803, 817 (9th Cir. 2018).

## CONCLUSION

For all the foregoing reasons, defendants' motions for summary judgment, <u>see</u> Dkts. #104–107, are GRANTED. Plaintiff's motions for partial summary judgment, <u>see</u> Dkt. #112, and declaratory judgment, <u>see</u> Dkt. #115, are DENIED. Defendants' motion for protective order, <u>see</u> Dkt. #117, and plaintiff's cross-motion for protective order, <u>see</u> Dkt. #122, are DENIED.

The Clerk of Court is directed to enter judgment against plaintiff and in favor of defendants.

DATED this 11th day of October, 2019.

Robert S. Lasnik
United States District Judge