UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AKLILU YOHANNES,<br><br>Plaintiff,<br><br>v.<br><br>OLYMPIC COLLECTION INC. et al.,<br><br>Defendants. | CASE NO. 17-cv-00509-JHC<br><br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on Defendants' Renewed Motions for Judgment as a Matter of Law. Dkt. # 271. The Court has reviewed the materials filed in support of and in opposition to the motions, the record, and the governing law. Being fully advised, for the reasons below, the Court: (1) DENIES Motion 1; (2) GRANTS IN PART AND DENIES IN PART Motion 2; (3) GRANTS Motion 3; and (4) GRANTS Motion 4.

## II
## DISCUSSION

Under Federal Rule of Civil Procedure 50(b), a party may file a renewed motion for judgment as a matter of law if: (1) the movant made a Rule 50(a) motion before the case was

submitted to the jury; (2) the court denied or deferred its ruling on the Rule 50(a) motion; (3) the Rule 50(b) motion raises the same grounds asserted in the Rule 50(a) motion; and (4) the Rule 50(b) motion was filed no later than 28 days after the jury returned a verdict or was discharged after being unable to reach a verdict. *See* Fed. R. Civ. P. 50(b); *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). In ruling on such a motion, the Court must decide "whether the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion[.]" *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 999 (9th Cir. 2008); *see also Elliott v. Versa CIC, L.P.*, 2019 WL 414499, at *5–6 (S.D. Cal. Feb. 1, 2019) (collecting cases and explaining that a Rule 50(b) motion can be granted, even when the jury does not return a verdict, so long as the standard for granting a motion for judgment as a matter of law is met).

This is a "very high" standard, and a court may "grant such a motion only if there is no legally sufficient basis for a reasonable jury to find for [the nonmoving] party on that issue." *Costa v. Desert Palace*, 299 F.3d 838, 859 (9th Cir. 2002) (internal quotation marks and citations omitted). At the Rule 50(b) stage, the court is not permitted to "make credibility determinations [or] weigh the evidence[,]" and it "must draw all inferences in favor of the [nonmoving party]" and "disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* (internal quotation marks and citation omitted). But "a reasonable inference cannot be supported by only threadbare conclusory statements instead of significant probative evidence." *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802 (9th Cir. 2009) (internal quotation marks and citation omitted). And judgment as a matter of law is appropriate if there is only a scintilla of evidence in the record or if the jury could have ruled in favor of the nonmoving party only by relying on speculation. *See id.* at 802–03 (collecting cases).

In reviewing a Rule 50(b) motion, the court considers the entire trial record, not just the evidence that was submitted before the Rule 50(a) motion was filed. *See Pet Food Exp. Ltd. v. Royal Canin USA, Inc.*, 2011 WL 6140874, at *5 (N.D. Cal. Dec. 8, 2011) (collecting cases); *Elbert v. Howmedica, Inc.*, 143 F.3d 1208, 1209 (9th Cir. 1998) ("[W]hen ruling on a Rule 50(b) motion, . . . [t]he record should be taken as it existed when the trial was closed.") (citation omitted). But the court's review is limited to *the evidence admitted at trial*. *See, e.g.*, *Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 951 (9th Cir. 2010); *Nat'l Prods., Inc. v. Gamber-Johnson LLC*, 734 F. Supp. 2d 1160, 1167 (W.D. Wash. 2010), *aff'd*, 449 F. App'x 638 (9th Cir. 2011); *Dupree v. Younger*, 598 U.S. 729, 731–32 (2023). Accordingly, the Court evaluates each of Defendants' motions below in light of the entire trial record[1] to determine whether there is sufficient evidence to permit a reasonable jury to find Defendants liable to Plaintiff under 42 U.S.C. § 1983 and if so, whether the record also supports Plaintiff's request for certain types of damages.

A. Motion 1

Defendants argue they "are entitled to judgment as a matter of law because [P]laintiff failed to meet his burden to present sufficient evidence to show a due process violation under 42 U.S.C. § 1983" and Washington State's garnishment laws. Dkt. # 271 at 4. They say that "the jury heard no evidence . . . that showed it was more probable than not that [D]efendants' conduct deprived [Plaintiff] of his due process rights" because: (1) Plaintiff presented no evidence concerning his "last known post office address" at the time the writ of garnishment was issued;

[1] As applied to Plaintiff's Response, this means that the Court can consider evidence elicited during Defendants' case but cannot consider facts from the Pretrial Order (or any other pretrial filing) that were not also presented and admitted at trial.

and (2) Plaintiff presented no proof that Defendants failed to file an appropriate affidavit with the state court. *Id.* at 4–6. The Court disagrees.

Although the Court acknowledges that Plaintiff presented sparse evidence at trial, it does find that such evidence, when viewed in the light most favorable to Plaintiff, would permit a reasonable jury to find on a more probable than not basis that the Lynnwood address was Plaintiff's "last known post office" and/or that Defendants failed to file an appropriate affidavit with the state court. This evidence includes: (1) Plaintiff's testimony that he used the Lynnwood address to send and receive mail; (2) Plaintiff's testimony that the Mukilteo address was not his address; (3) Plaintiff's testimony that he did not receive notice of the garnishment before withholding began; (4) Mr. Ansari's testimony concerning the different addresses listed in Plaintiff's file and the different addresses listed on certain pieces of mail; (5) Mr. Ansari's testimony that he does not believe that he ordered an affidavit to be filed with the state court and that he does not believe he has ever seen an affidavit of service in Plaintiff's case; (6) Mr. Ansari's testimony that he does not know whether an affidavit of service was filed in the state court that corresponds to Plaintiff's writ of garnishment; (7) Plaintiff's testimony (and the parties' stipulation) that the state court record was destroyed; (8) the absence of a docket entry in the state court record showing that there was an affidavit filed; and (9) the absence of any dispositive evidence in the record showing that an affidavit *was* filed with the state court, that the Lynnwood address *was not* Plaintiff's last known post office address, or that the Mukilteo address *was* Plaintiff's last known post office address. *See* Dkt. ## 273 at 31–33, 47, 124–130; 274 at 9–10, 16–17; 21-1 at 1–2. And while such evidence in no way proves that Defendants failed to comply with the proper notice procedures as a matter of law, it does provide a basis from which a jury could reasonably infer that Defendants violated Washington's garnishment laws and thus deprived Plaintiff of his right to property without due process of law. *See* Dkt. #

261 at 17, 19–21 (Jury Instruction Nos. 15, 17, & 18 explaining what Plaintiff must prove to prevail on his § 1983 claim).

Accordingly, the Court finds that there was enough evidence at trial to permit a reasonable jury to find for Plaintiff on his § 1983 claim, and so the Court DENIES Motion 1.

B. Motion 2

Defendants argue that the Individual Defendants—Farooq Ansari, Susan Cable, and Norman L. Martin—are entitled to judgment as a matter of law because Plaintiff failed to present evidence that these individuals personally participated in the acts that allegedly led to the due process violation. *See* Dkt. # 271 at 6–7. The Court agrees with respect to Ms. Cable and Mr. Martin but disagrees with respect to Mr. Ansari.

An individual defendant can be held liable under § 1983 if they "do[ ] an affirmative act, participate[ ] in another's affirmative acts, or omit[ ] to perform an act which [they are] legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Liability is appropriate if the plaintiff can show "some kind of direct personal participation [by the defendant] in the deprivation" or if they can show that the defendant "set[ ] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 743–44. But an individual cannot be found liable under § 1983 merely because they hold a supervisory role. *See, e.g.*, *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *James v. Lee*, 485 F. Supp. 3d 1241, 1251–52 (S.D. Cal. 2020). Instead, a defendant may be found liable for the constitutional violations of their subordinates only if "the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Avalos v. Baca*, 517 F. Supp. 2d 1156, 1167 (C.D. Cal. 2007), *aff'd,* 596 F.3d 583 (9th Cir. 2010).

Here, there is no trial evidence linking Ms. Cable or Mr. Martin to the alleged constitutional violation. As for Mr. Martin, Plaintiff's evidence shows that he participated in the garnishment process.[2] But as the Court has repeatedly acknowledged throughout this case, it is the purported failure to provide notice before garnishing Plaintiff's wages, not the fact of garnishment itself, that gives rise to the claimed constitutional injury. *See, e.g.*, Dkt. ## 168, 174, 200, & 249. Accordingly, Plaintiff's evidence that Mr. Martin participated in the garnishment of Plaintiff's wages or was involved in OCI's garnishment processes more generally does not, standing alone, provide a legally sufficient basis to find him liable to Plaintiff for the claimed constitutional injury. Likewise, Plaintiff's evidence that Ms. Cable participated in the garnishment process and supervised the individuals who were responsible for providing Plaintiff with notice[3] does not prove that Ms. Cable personally participated in the claimed constitutional violation, directed the constitutional violation, knew of the violation and failed to act to prevent it, or otherwise set in motion a series of acts by others which she knew or reasonably should have known would cause others to inflict the constitutional injury. There is thus nothing in the trial record that would allow a reasonable jury to find Ms. Cable or Mr. Martin liable to Plaintiff on

---

[2] *See, e.g.*, Dkt. ## 273 at 148 (Mr. Ansari explaining that Mr. Martin reviewed and signed off on the writ of garnishment); 274 at 18–19 (same); *id.* at 22–23 (Mr. Martin confirming the same); 70-1 at 8–11 (notice of garnishment and writ of garnishment bearing Mr. Martin's signature); 273 at 147–50 (Mr. Ansari explaining that Mr. Martin had no role in filling out the garnishment forms or making sure that the court, judgment debtor, or the judgment debtor's employer gets the writ).

[3] *See, e.g.*, Dkt. ## 273 at 77–78 (Ms. Cable acknowledging "managerial authority" over the "garnishment clerks"); *id.* at 79–82 (Ms. Cable acknowledging the authority to make the decision whether to release a garnishment and explaining the communications between her and other employees about whether to release Plaintiff's garnishment); *id.* at 147–50 (Mr. Ansari explaining that Ms. Cable had no role in filling out the garnishment forms or making sure that the court, judgment debtor, or the judgment debtor's employer gets the writ); 50 at 19 (Debtor History Report indicating that "KAB" emailed Ms. Cable for "assistance" on December 8, 2015 about releasing and resending the garnishment to the Department of Transportation); *id.* at 20–21, 23, 29 (Debtor History Report indicating that Ms. Cable was involved in various "email assists" after the allegedly deficient notice acts occurred).

this § 1983 claim.[4] So the Court GRANTS Motion 2 as to Ms. Cable and Mr. Martin and DISMISSES them WITH PREJUDICE.

The Court does, however, find that there is sufficient evidence to permit a reasonable jury to find that Mr. Ansari participated in the constitutional violation. While a very close call, the Court notes that Mr. Ansari stated at trial that he "directed that [the application and writ] be sent to the court for filing and mailed to the garnishee defendant and Mr. Yohannes." Dkt. # 274 at 8–9. He also stated that he did not believe he ordered the affidavit to be filed with the Court, that he assigned Plaintiff's file to Kayla Brown to handle, and that he caused the writ of garnishment to be served on Plaintiff. *See id.* at 9, 16; Dkt. # 110 at 4. More generally, Mr. Ansari explained that as OCI's owner, he handles and assigns case files, determines whether OCI should proceed with a garnishment, and helps resolve any issues or problems that may arise during the garnishment process. *See* Dkt. ## 110 at 2–4; 273 at 156. His name also appears various times throughout Plaintiff's Debtor History Report, including around the time that notice should have been provided. *See generally* Dkt. # 50 at 10–29. Thus, unlike with Mr. Martin and Ms. Cable, there is at least some evidence in the trial record linking him to the alleged constitutional injury, and so the Court DENIES Motion 2 as to Mr. Ansari.

C. Motion 3

Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's lost wages claim, as his presentation at trial was too speculative to support an award of such damages. *See* Dkt. # 271 at 7–8. The Court agrees.

Under § 1983, damages may be awarded "to compensate persons for injuries caused by the deprivation of rights[.]" *Carey v. Piphus*, 435 U.S. 247, 255–57 (1978). A court may not,

---

[4] The Court also affirms that it is *Plaintiff's burden* to prove that each Defendant participated in the alleged violation; it is not Defendants' burden to prove a lack of participation.

however, award compensatory damages for "uncertain, conjectural, or speculative losses[,]" or losses for which the plaintiff has not "sufficiently establish[ed] the causal connection." *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 533 n.26 (1983) (citations omitted); *see also* Dkt. # 261 at 22 (Final Jury Instruction No. 19 setting forth the Ninth Circuit's causation standard in a § 1983 action); *id.* at 23–24 (Final Jury Instruction No. 20 setting forth the Ninth Circuit's standard for awarding compensatory damages in a § 1983 action). Thus, for a reasonable jury to award Plaintiff damages for lost wages on any proved § 1983 violation, Plaintiff must first present: (1) evidence that he actually lost out on wages, earnings, and/or employment opportunities; and (2) evidence that such losses were actually and proximately caused by Defendants' purported failure to provide proper notice before garnishing his wages. Plaintiff did not meet this burden.

To begin, the Court questions whether Plaintiff presented any nonspeculative evidence at trial that would support a finding of lost wages. *See* Dkt. # 278 at 5–6 (Defendants explaining why Plaintiff's claimed damages for lost wages are too speculative). This evidentiary deficiency is particularly problematic in light of the uncontested, and nonspeculative facts, that Defendants presented at trial: (1) after 2016, Plaintiff applied for only one new job, and he received it; (2) Plaintiff was aware of no individual who lost a job or did not receive a new job because of a garnishment in their file; (3) no one told Plaintiff that he would not be able to get a different job because of the garnishment in his file; and (4) Plaintiff's wages increased every year from 2016 to 2024. Dkt. # 273 at 42–47, 55–57, 67.

But even if Plaintiff did present evidence to support a finding of lost wages, dismissal would still be appropriate. Viewing the trial record in the light most favorable to Plaintiff, Plaintiff's evidence, at most, establishes that the *garnishment* was a cause in fact and proximate cause of some unspecified missed employment opportunities and lost earnings; it does not

establish that Defendants' purported *failure to mail the writ to his last known post address and/or to file a copy of the affidavit with the state court* was a cause in fact or proximate cause of his claimed losses. Accordingly, no reasonable jury could find, based on the record presented at trial, that the lost wages claimed by Plaintiff were directly or proximately caused by the alleged constitutional violation.[5] There is thus no legally sufficient basis for a jury to award compensatory damages for lost wages, and so the Court GRANTS Motion 3 and DISMISSES Plaintiff's claim for these damages WITH PREJUDICE.

D. Motion 4

Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's punitive damages claim, as Plaintiff "failed to present any evidence that would rise to the level of establishing that [D]efendants acted with evil motive or intent or reckless or callous indifference to [P]laintiff's federally protected rights." Dkt. # 271 at 9. The Court agrees.

To award punitive damages in a § 1983 action, a plaintiff must show that the defendant's conduct was "motivated by evil motive or intent," involved "reckless or callous indifference to the federally protected rights of others[,]" or was "malicious, wanton, or oppressive[.]" *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Dang v. Cross*, 422 F.3d 800, 806–09 (9th Cir. 2005). Such damages are available, however, "only on a showing of the requisite intent." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986). This, in turn, requires showing more than mere culpability or negligence; it requires showing a certain degree of egregiousness, bad faith,

[5] The Court also notes that while Plaintiff's other claimed compensatory damages are beyond the scope of this order, the same principle applies to them as well: as a matter of law, Plaintiff may recover only those damages which were caused by the alleged § 1983 violation, i.e., only those damages which stem from Defendants' purported failure to provide him with constitutionally adequate notice before garnishing his wages.

or reprehensibility. *See* Dkt. # 261 at 26–27 (Final Jury Instruction No. 22 setting forth the Ninth Circuit's standard for awarding punitive damages in a § 1983 action).

Plaintiff has not met this threshold. The trial record contains no evidence that Defendants had any ill will or spite towards Plaintiff, that they intended to violate his due process rights, or that they otherwise injured him or violated his rights with unnecessary harshness or severity. *See generally* Dkt. ## 273 & 274. And the evidence Plaintiff cites to support such an award, *see* Dkt. # 276 at 11–14, when considered alongside the key facts that have already been established—that Plaintiff owed a debt to OCI, that Defendants were authorized to garnish Plaintiff's wages for some period of time pursuant to a valid state court judgment, that the amount of money at issue was relatively small, and that Defendants acted quickly to return Plaintiff's money, resulting in an alleged deprivation of just four days—simply does not permit a reasonable jury to infer the requisite degree of malintent. There is thus nothing in the trial record to support an award of punitive damages, and so the Court GRANTS Motion 4 and DISMISSES Plaintiff's punitive damages claim WITH PREJUDICE.

## III
## CONCLUSION

For these reasons, the Court:

(1) DENIES Motion 1 (Dkt. # 271 at 4–6).

(2) GRANTS IN PART and DENIES IN PART Motion 2 (Dkt. # 271 at 6–7). Motion 2 is GRANTED as to Susan Cable and Norman L. Martin, and DENIED as to Farooq Ansari.

(3) GRANTS Motion 3 (Dkt. # 271 at 7–8).

(4) GRANTS Motion 4 (Dkt. # 271 at 8–9).

(5) DISMISSES WITH PREJUDICE Defendants Susan Cable and Norman L. Martin.

(6) DISMISSES WITH PREJUDICE Plaintiff's claims for lost wages and punitive damages.

(7) DENIES, as moot, Defendants' oral Rule 50(a) Motions (Dkt. # 273 at 135–38).

Dated this 29th day of October, 2026.

John H. Chun

John H. Chun
United States District Judge